UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARL ADOLPH FRANTZ,<br>Petitioner,<br>v.<br>RATHEAL FISHER, JR.,<br>Respondent. | Case No. 1:17-cv-00995-JDP (HC)<br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY<br>ECF No. 1 |

Petitioner Karl Adolph Frantz, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. The parties have consented to the jurisdiction of a magistrate judge. ECF Nos. 8, 25. We will deny the petition and decline to issue a certificate of appealability.

## I. Background

Petitioner injured another man with a knife during an altercation. According to petitioner, he tried to defend himself, thinking that the other man was going to stab him. Petitioner alleges that, while he was holding out his knife, the other man kicked him, cutting his own leg. He further alleges that the victim kicked petitioner's groin, causing him to fall forward with the knife in hand, again cutting the victim. The jury did not believe petitioner's he-ran-into-my-knife-twice account and found him guilty of assault with a deadly weapon. *See* Cal. Penal Code § 245. The

state trial court sentenced petitioner to eleven years in prison, after enhancements.[1]

We set forth below the facts of the underlying offenses, as stated by the California Court of Appeal, Fifth District ("Court of Appeal"). A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

> Frantz was homeless prior to April of 2012, when he moved in with Steven Melrose and Melrose's wife, Angel Smith. Frantz worked as a "sign shaker" at Melrose's store, Cowboy Joe's Smoke Shop. Smith owned a thrift store, which was next door to Cowboy Joe's.
>
> Melrose testified that on the morning of June 19, 2012, Frantz was working as a sign shaker in front of Cowboy Joe's and was drinking alcohol. Melrose did not want a "drunk" sign shaker and told Frantz he could not drink and be out front shaking the business sign. Melrose poured out the drink Frantz was holding; Frantz said nothing. Melrose said Frantz walked off down the street and returned a couple hours later.
>
> Frantz admitted he put vodka in a Slurpee cup. Frantz claimed that Melrose threw the drink "in my eyes and said something alluding to the fact of 'You're getting with my wife. . . . You're threatening to turn us in for fraud. If you come back here, I will kill you.'"
>
> Frantz walked to a fire station. Officer Robert Lincoln responded to a 1:00 p.m. call of a man at the fire station claiming someone had thrown something in his eyes. Frantz told Lincoln he had been involved in an altercation with the owner of Cowboy Joe's and the owner threw vodka in his face. Lincoln saw no signs of injury to Frantz or any liquid on his face or clothing. Frantz smelled of alcohol and displayed "objective symptoms of somebody that's intoxicated. He had an odor of alcohol on his breath. He was very unsteady." Lincoln told Frantz "that it would be in his best interest to stay away from there and go sober up somewhere." According to Lincoln, Frantz "kind of laughed it off and agreed that he would stay away from the store."
>
> Frantz, however, returned to the location and went into Smith's thrift store. Smith, Ligail Louise Linicon and Mildred Regina Thompson were inside the thrift store at the time. Linicon testified that when Frantz entered the thrift store, he seemed angry and agitated; Frantz walked around "upset, [and] mumbling." Thompson testified Frantz had said "You're gonna pay."
>
> Linicon saw Frantz walk past a knife display in the store where a butcher block of knives was located; the knives were not locked. Linicon did not see a knife in Frantz's hand and did not know if a knife was missing from the display. Linicon said Frantz slammed

[1] Petitioner waived his right to counsel and represented himself at trial. CT 1:40. All "CT" citations refer to the clerk's transcript. All "RT" citations refer to the reporter's transcript. Respondent has lodged these documents with this court. *See* ECF No. 21.

the door as he walked out and the next thing she heard was a scream.

Melrose was sitting in a chair in front of his store when Frantz walked out of the thrift store. Frantz did not say anything, but walked over and stabbed him in the side. When Melrose tried to kick Frantz, Frantz stabbed him in the leg.

Smith witnessed the stabbing and thought Frantz intentionally stabbed Melrose because he stabbed him more than once. Melrose did not have a weapon and "was in no position to attack him back." Smith stated that Melrose exclaimed, "You just stabbed me" and that got her attention and she saw Frantz stab Melrose a "second time."

Smith testified she "took the knife from [Frantz] and kind of like tucked his arm back and held him towards the ground" and a couple people from the street stopped to assist. Frantz "tried to resist" and was "trying to get away." Smith testified Frantz was trying to continue his attack.

Officer Lincoln, who had conversed with Frantz at the fire station, also responded to the report of a stabbing at Cowboy Joe's. Lincoln arrived to find people detaining Frantz outside the store and Melrose sitting in a chair inside the store, with "blood all over the floor." Melrose was bleeding from wounds to his stomach and leg. There was a bloody knife on the store floor and a trail of blood drops from the sidewalk to inside the store. The bloody knife "matched that of the other remaining knives that were still in the butcher block" in the thrift store and appeared to have been taken from the butcher block.

Officer Rodney Cancio was assisting Lincoln. Frantz told Cancio "I did it" and stated "I was only trying to scare him, not kill him." Frantz smelled of alcohol and told Cancio he had drunk a pint of alcohol.

Officer Brandi Phebus interviewed Frantz the day after the attack. Frantz told her that after he left the fire station, he went back to the thrift store and grabbed a knife. He stood next to Melrose and claimed Melrose said, "I'm going to kill you." Frantz said he "had the knife in his hand and it kind of stuck" in Melrose's left shoulder. As for the leg wound, when Melrose tried to stand up, he "kind of stuck himself." Frantz claimed the attack was not intentional. Frantz also claimed that Melrose had assaulted him in the past, but did not mention anything about Melrose striking or kicking him the day of the incident.

Melrose was hospitalized for five or six days as a result of the attack, two of them in critical care. He had two surgeries while in the hospital. Melrose was in pain as a result of the injuries. Smith said Melrose, "hasn't been able to really work" since the attack.

Frantz was charged with assault with a deadly weapon (count 1), and making criminal threats (count 2). As to count 1, it was alleged

> Frantz personally inflicted great bodily injury. It also was alleged that Frantz had suffered a prior serious felony conviction in 1999 for attempted armed robbery.
>
> Frantz pled not guilty to all charges. Trial testimony began on June 27, 2013. On July 1, 2013, the People dismissed the count 2 charge.
>
> Frantz testified in his own defense. Frantz stated he was an alcoholic and needed a drink the morning of June 19, 2012, because he "was starting to get the shakes." He put vodka in a Slurpee cup. When he went outside with his drink, Melrose grabbed it and threw it in his face. Frantz staggered down the street to the fire station and an ambulance and police were called.
>
> Frantz returned to the store to collect his debit card. He claimed Melrose stated, "I told you if you c[a]me back I'd kill your ass." Frantz "always carried [a] butcher knife" because he had been jumped. He tried to unhinge his knife and Melrose leaned back in his chair and kicked him in the groin. Frantz testified he thought Melrose was going to "stab me, kill me." Frantz claimed the knife struck Melrose's leg when he kicked at Frantz and Melrose's stomach was cut when Frantz "fell into his shoulder."
>
> Frantz claimed that he and Melrose's wife, Smith, had begun spending a lot of time together. Melrose accused him of "getting with my wife." A few days before the June 19 incident, Frantz claimed Melrose had "backhanded" him the car and also hit him with a golf club. Frantz claimed Melrose regularly carried a knife and on a couple of occasions a hand gun.
>
> Frantz also claimed he saw Smith taking money that was supposed to go to the homeless. He stated Smith took $7,000 to $8,000.
>
> After Melrose testified, he was observed leaving the courthouse by a private investigator, Rick Barclay. Barclay testified Melrose's movements and demeanor substantially changed after he exited the courthouse. While in the courtroom, Melrose appeared to struggle walking and be in pain; outside he appeared to move normally and without pain.
>
> On July 2, 2013, the jury returned a verdict of guilty on the count 1 offense and found true the allegation of personal infliction of great bodily injury. In a bifurcated proceeding on July 3, the trial court found true that Frantz had suffered a prior serious felony conviction.

*People v. Frantz*, No. F067901, 2016 WL 402978, at *1-3 (Cal. Ct. App. Feb. 2, 2016).

## II. Discussion

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75

(2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See* § 2254; *Harrington v. Richter*, 562 U.S. 86, 97 (2011); *Woodford v. Garceau*, 538 U.S. 202, 206-08 (2003). To decide a Section 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court reviews the state court's decision under the deferential standard of Section 2254(d). Section 2254(d) precludes a federal court from granting habeas relief unless a state court's decision is (1) contrary to clearly established federal law, (2) a result of an unreasonable application of such law, or (3) based on an unreasonable determination of facts. *See* § 2254(d); *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). A state court's decision is contrary to clearly established federal law if it reaches a conclusion "opposite to" a holding of the United States Supreme Court or a conclusion that differs from the Supreme Court's precedent on "materially indistinguishable facts." *Soto v. Ryan*, 760 F.3d 947, 957 (9th Cir. 2014) (citation omitted). The state court's decision unreasonably applies clearly established federal law when the decision has "no reasonable basis." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). An unreasonable determination of facts occurs when a federal court is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016). A federal habeas court has an obligation to consider arguments or theories that "could have supported a state court's decision." *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (quoting *Richter*, 562 U.S. at 102). On all issues decided on the merits, the petitioner must show that the state court's decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Even when a state court does not explicitly address a petitioner's claims on the merits, a Section 2254 petitioner must satisfy a demanding standard to obtain habeas relief. When a state

court gives no reason for denying a petitioner's habeas claim, a rebuttable presumption arises that the state court adjudicated the claim on the merits under Section 2254(d). *See Richter*, 562 U.S. at 99. And a federal habeas court's obligation to consider arguments or theories that could support a state court's decision extends to state-court decisions that offer no reasoning at all. *See Sexton*, 138 S. Ct. at 2557.

If a state court denies a petitioner's habeas claim solely on a procedural ground, then Section 2254(d)'s deferential standard does not apply, *see Visciotti v. Martel*, 862 F.3d 749, 760 (9th Cir. 2016), but the petitioner faces another hurdle: if the state court's decision relies on a state procedural rule that is "firmly established and regularly followed," the petitioner has procedurally defaulted on his claim and cannot pursue habeas relief in federal court unless he shows that the federal court should excuse his procedural default. *See Johnson v. Lee,* 136 S. Ct. 1802, 1804 (2016); *accord Runningeagle v. Ryan,* 825 F.3d 970, 978-79 (9th Cir. 2016). If the petitioner has not pursued his habeas claim in state court at all, the claim is subject to dismissal for failure to exhaust state-court remedies. *See Murray*, 882 F.3d at 807.

If obtaining habeas relief under Section 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.* at 103 (citation omitted). Our habeas review authority serves as a "guard against *extreme* malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (emphasis added).

Here, petitioner raises only one habeas claim: that the trial court erroneously precluded him from impeaching a witness, in violation of his right to confront witnesses against him. Angel Smith, the victim's wife, testified at trial that she saw petitioner stabbing the victim. Before Smith's testimony, petitioner explained to the trial judge and the prosecutor that petitioner planned on impeaching Smith with her 2007 misdemeanor conviction for presenting a false claim for payment. *See* Cal. Penal Code § 72. The prosecutor argued that the 2007 conviction was inadmissible because it was irrelevant. Although the trial court did not explicitly say that

petitioner could not use Smith's 2007 conviction to impeach her, the trial court instructed petitioner that he could cross-examine Smith only about "issues pertaining to this case," RT 4:775, so we assume, as the Court of Appeal did, that the trial court ruled against petitioner and that he could not impeach Smith with the 2007 conviction. On direct appeal, the Court of Appeal concluded that Smith's 2007 conviction involved dishonesty and reflected on her credibility. *See Frantz*, 2016 WL 402978, at *4. The Court of Appeal, however, concluded that the trial court had the discretion to exclude the impeaching evidence given that it "would necessitate undue time and generate confusion . . . ." *Id*. The California Supreme Court summarily denied review.

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). Cross-examination includes discrediting the witness through impeachment, and "[o]ne way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). "It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits" on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). A trial judge retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* And even after finding a violation of the Confrontation Clause, a federal court will assess whether the violation was harmless. *See id.* at 680; *Merolillo v. Yates*, 663 F.3d 444, 455 (9th Cir. 2011).

Here, petitioner does not state a cognizable claim. Smith's 2007 conviction for presenting a false claim for payment involved dishonesty, and that conviction could allow a jury to infer that her character was "such that [s]he would be less likely than the average trustworthy citizen to be truthful in [her] testimony." *Davis*, 415 U.S. at 316. Federal courts ordinarily admit witnesses' prior convictions that involve dishonesty without weighing the probative value of the conviction.

*See* Fed. R. Evid. 609(a)(2). This does not mean, however, that precluding petitioner from using Smith's 2007 conviction violated the Constitution. Petitioner appears to believe that any limitation on his cross-examination warrants habeas relief, but we may not frame the Supreme Court's "precedents at such a high level of generality." *Lopez v. Smith*, 574 U.S. 1, 4 (2014) (citation omitted). Only Supreme Court's precedent addressing the "specific question presented by this case" can establish a clearly established rule of federal law, *id.*, and petitioner has identified none. Because petitioner has identified no clearly established rule of federal law supporting his claim, he has not shown a violation.

More fundamentally, however, even if there had been a constitutional violation here, it would have been harmless, as the Court of Appeal explained—considering the government's evidence against petitioner. *See Frantz*, 2016 WL 402978, at *4. The standard from *Brecht v. Abrahamson*, 507 U.S. 619 (1993), governs. *See Dixon v. Williams*, 750 F.3d 1027, 1034 (9th Cir. 2014) (per curiam). Under *Brecht*, a petitioner can obtain federal habeas relief only if "the error had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637. To satisfy this standard, the court must have "grave doubt" as to the outcome, meaning that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *See O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

The record here does not raise such grave doubt as to the trial's outcome. A police officer who interviewed petitioner after the incident, testified at trial. This officer, Rodney Cancio, testified that petitioner said, "I did it . . . . I was only trying to scare him, not kill him . . . ." RT 5:1060. Cancio did not recall petitioner mentioning being attacked by Melrose or Melrose holding a knife, even though petitioner maintains he felt threatened that Melrose would stab him. RT 5:1060-61. Another police officer, Brandi Phebus, testified at trial. According to Phebus, petitioner told her that he grabbed a knife from Smith's thrift store—before any alleged altercation with Melrose. RT 5:1040. Phebus testified that, when she interviewed petitioner, he did not say anything about Melrose striking or kicking him. RT 5:1041, 1043-45. Petitioner told Phebus that the victim "kind of stuck himself . . . by getting his ass up"—not by kicking

petitioner in the groin. *See* RT 5:1041, 1044. The knife, according to petitioner right after the incident, "kind of stuck" the victim in the left shoulder. RT 5:1040. Steven Melrose testified that he was sitting down when he got stabbed in his side by petitioner. RT 4:720. Although petitioner insists that he cut Melrose by accident—after Melrose stood up—the jury could find that the stabbing was not an accident in light of Melrose's testimony. Petitioner does not identify any problem with the the examinations of the foregoing witnesses or challenge the weight or admissibility of their testimony. Petitioner has not managed to raise grave doubt as to the trial's outcome. The petition is denied.

## III. Other Matters

Petitioner states in passing that his right to fair trial has been violated. ECF No. 1 at 2. Petitioner does not develop an argument in support of this assertion, and we need not construct an argument on behalf of petitioner. *See Williams v. Rodriguez*, No. 14-cv-2073, 2017 WL 511858, at *9 (E.D. Cal. Feb. 8, 2017) ("Undeveloped arguments that are only argued in passing or made through bare, unsupported assertions are deemed waived.") (citing *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010)); *Lexington Ins. Co. v. Silva Trucking, Inc.*, No. 14-cv-15, 2014 WL 1839076, at *3 (E.D. Cal. May 7, 2014) (collecting cases). General appeals to broad principles do not state cognizable federal habeas claims. *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004).

Petitioner also moves for a "declaratory order" and judgment on the pleadings. *See* ECF No. 32. Petitioner reiterates the same arguments he advances in his petition and traverse. *See generally id*. His arguments lack merit, and the alleged error was harmless, as discussed above. We will deny petitioner's motion.

## IV. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d

1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, the court declines to issue a certificate of appealability.

**V. Order**

1. The petition, ECF No. 1, is denied.
2. All pending motions are denied.
3. The court declines to issue a certificate of appealability.
4. The clerk of court is directed to enter judgment in favor of respondent and close this case.

IT IS SO ORDERED.

Dated: May 8, 2019

UNITED STATES MAGISTRATE JUDGE

No. 202